IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN HALARIS and DENNIS CONNIFF, § § § | | |
| Plaintiffs, § § | | |
| v. § | Civil Action No. 3:06-CV-1646-N | |
| § | | |
| VIACOM, INC., *et al*., § § | | |
| Defendants. § | | |

# **ORDER**

This Order addresses Blockbuster Defendants[1] and Viacom Defendants'[2] motions to dismiss Plaintiffs' first amended complaint [34 & 35]. Plaintiffs John Halaris and Dennis Connif, on their own behalf and on behalf of others similarly situated, advance this action pursuant to Employee Retirement Income Securities Act ("ERISA") section 502(a)(2), 29 U.S.C. § 1132(a)(2). For the reasons explained below, the Court grants Defendants' motions.

---

[1]John F. Antioco, Peter A. Bassi, Mary Bell, Robert A. Bowman, Jackie M. Clegg, Gary J. Fernandes, Linda Griego, Keith M. Holtz, Bruce Lewis, John L. Muething, Dan Satterthwaite, Larry Zine, Blocbuster Inc. ("Blockbuster"), the Blockbuster Retirement Committee, and the Blockbuster Investment Committee.

[2]Viacom Inc. ("Viacom"), the Viacom Investment Committee, the Viacom Retirement Committee, William A. Roskin, John R. Jacobs, Robert G. Freedline, Barbara Mickowski, Philippe P. Dauman, Sumner M. Redstone, Richard J. Bressler, Michael D. Fricklas, and Mel Karmazin.

## I. BACKGROUND[3]

Plaintiffs were and are participants in the Blockbuster Investment Plan (the "Plan"). The Plan is an Eligible Individual Account Plan ("EIAP") under ERISA. Employees accumulated assets in the Plan through two primary avenues. First, the employee/participants could make contributions. That is, participants could save for retirement by directing the investment of certain funds – i.e., pre-tax salary contributions, after-tax contributions, and rollover contributions – into the various funds established by the Investment Committee. Second, Blockbuster made certain matching contributions. According to the Plan, Blockbuster matches 100% of the first 3% of annual compensation contributed and 50% of the next 2% of annual compensation contributed. Before January 1, 2006, matching contributions were initially invested in the Blockbuster Stock Fund, which participants could freely transfer into other investment funds available under the Plan. Since January 1, 2006, participants direct the initial investment of the matching contributions, although the Blockbuster Stock Fund remains an option.

Plaintiffs allege that a the Defendants were fiduciaries of the Plan and that Defendants breached various fiduciary duties. More specifically, Count I alleges that members of Viacom and Blockbuster Investment and Retirement Committees (the "Committee Members") knew or should have known that Blockbuster stock was an imprudent investment and that they breached their fiduciary duties by failing to divest the Plan's holdings in

---

[3]The Court provided a more extensive summary of the facts in its Order addressing Defendants' previous motions to dismiss. *See* Order (Sep. 21, 2007).

Blockbuster stock, by continuing to offer Blockbuster stock as an investment option, and by allowing Plan participants to exchange their Viacom stock for Blockbuster stock. Count II alleges that Committee Members breached their duty to provide complete and accurate information. Count III alleges that certain Viacom and Blockbuster Defendants breached their duty to monitor the fiduciaries they appointed. Count IV alleges that all Defendants breached their duty of loyalty to avoid conflicts of interest. Count V alleges that co-fiduciaries failed to prevent other fiduciaries' breaches. Finally, Count VI alleges that Viacom and Redstone engaged in self-dealing. Defendants contend that Plaintiffs have failed to state a claim with respect to all counts.

## II. MOTION TO DISMISS STANDARD

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965, 1974 (2007). A plaintiff is required, however, to provide "more than labels and conclusions, and a formulaic recitation of a cause of action will not do." *Id.* at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). In ruling on a Rule 12(b)(6) motion, the court must limit its review

to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). A court may also consider documents attached to a motion to dismiss that are referred to in the plaintiff's complaint and are central to the plaintiff's claim, *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003), as well as the contents of documents filed with the Securities Exchange Commission. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).

### III. PLAINTIFFS' ALLEGATIONS THAT THE COMMITTEE MEMBERS BREACHED FIDUCIARY DUTIES BY CONTINUING INVESTMENT IN BLOCKBUSTER STOCK DO NOT STATE A CLAIM

Although Plaintiffs have offered a detailed account of Blockbuster's travails, the great majority of their allegations directed at the Committee Members are rendered irrelevant by the Fifth Circuit's recent decision in *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008). The Court explained that ERISA generally exempts an EIAP from the duty to diversify with regard to the purchase or holding of company stock. *Id*. at 248-49. The Court thus held that any allegations that publically available information would have led the defendants to conclude that investment in company stock was an imprudent investment failed to state a claim. Instead, plaintiffs may state a claim only where a fiduciary's knowledge of nonpublic information did or should have made the fiduciary aware that investment in company stock was not only a risky investment, but a *bad* one – that "it was imprudent for the Plan to hold even one share of [company] stock" because the price was artificially inflated. *See id*. at 249. Accordingly, only Plaintiffs' allegations that the Committee

ORDER – PAGE 4

Members were privy to nonpublic information that Blockbuster's share price was artificially inflated are relevant.[4]

Although it is difficult to discern from Plaintiffs' complaint exactly what nonpublic information the Committee Members are alleged to have known, apparently they complain about two issues. First, Plaintiffs allege that the Committee Members, as insiders, knew that Blockbuster's operating cash flow was overstated because Blockbuster's financial statements erroneously included rental library purchases as an "investing cash outflow" rather than as an "operating cash outflow." Second, Plaintiffs allege that the Committee Members knew that Blockbuster intended to unveil a new "No Late Fee" initiative that would eliminate revenues attributable to late fees, the magnitude of which was unknown to the public.

Plaintiffs' allegations do not overcome the *Moench* presumption. The Fifth Circuit in *Kirschbaum* described the *Moench* presumption:

> We do not hold that the *Moench* presumption applies only in the case of investments in stock of company that is about to collapse. The presumption, however, is a substantial shield. As *Moench* states, it may only be rebutted if unforeseen circumstances would defeat or substantially impair the accomplishment of the trust's purposes. One cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty to depart from ESOP or EIAP plan provisions. Instead, there ought to be persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest . . . A fiduciary cannot be placed in the untenable position of having to predict the future of the company stock's performance.

---

[4]Thus, as just one example, the following allegation is irrelevant: "The [Plan] provisions contributed to the maintenance of undue concentration of Plan assets in Blockbuster stock during the Class Period." Amended Complaint at 10.

ORDER – PAGE 5

*Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d at 256.[5] Plaintiffs have failed to allege that the Committee Members had access to nonpublic information that should have put them on notice that Blockbuster was about to collapse or otherwise suffer such calamities that they should have considered themselves bound to divest; Plaintiffs have failed to allege that Defendants' knowledge of the accounting misclassification and plans for the "No Late Fee" initiative should have alerted Defendants to forthcoming drops in the stock price. Plaintiffs' pleadings are devoid of "persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest," *id.*, and thus fail to overcome the *Moench* presumption.[6]

---

[5]The quoted text is the Fifth Circuit's description of the regular *Moench* presumption. The Fifth Circuit also noted that an even higher standard may be appropriate "where an EIAP absolutely requires investment in employer stock." *Kirschbaum*, 526 F.3d at 256. Although it is possible that this uber-*Moench* presumption might ultimately apply, such a determination cannot be made at this stage. Accordingly, the Court proceeds under the assumption that Plaintiffs must overcome only the regular *Moench* presumption.

[6]Most indicative of Plaintiffs' failure to overcome the *Moench* presumption is the absence of allegations that the nonpublic information actually inflated the stock price. In order to satisfy the basic pleading standard, Plaintiffs must allege facts making it plausible that Defendants should have, by virtue of their nonpublic knowledge, considered themselves bound to divest. Such a claim is decidedly implausible if Plaintiffs are unable to allege that the value of the stock price dropped upon disclosure of the information. If the information should have alerted Defendants of the need to divest, it should also have alerted the market that the price was inflated. Plaintiffs have wholly failed to make such allegations.

Essentially, Plaintiffs' allegations support only the claim that the stock dropped due to the (unfortunate) materialization of publically known risk; there is no suggestion that the nonpublic information inflated the stock price. For example, Plaintiffs have not alleged that the share price dropped when Blockbuster announced its "No Late Fee" initiative and the amount of revenue that the initiative would sacrifice. Instead, their allegations support only the claim that the share price dropped when the initiative did not end up working as hoped and expected. Similarly, the allegations are insufficient to support the notion that the accounting misclassifications regarding cash flow artificially inflated the share price. On

Furthermore, Plaintiffs' claim is not saved by their allegations of self interest. Plaintiffs allege, on information and belief, that the Committee Members' compensation and tenure were tied to the performance of Viacom stock and that the Committee Members were thus motivated to inflate the value of the Blockbuster stock that was largely owned by Viacom. Although allegations that "holding of company stock and participation in its compensation program created a conflict of interest are insufficient by themselves to state a claim under ERISA," *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 768 (S.D.N.Y. 2003), a court should more thoroughly scrutinize transactions tainted by self-interest. *See In re RCN Litigation*, 2006 WL 753149, *12 (D.N.J. Mar. 21, 2006) ("The inherent risk of dual loyalties for corporate directors and employees who also serve as administrators for their company's [plan] is to be taken into account as a factor in applying judicial scrutiny to an administrator's decision with regard to management of [plan] funds."). But given how resoundingly Plaintiffs have failed in alleging that the Committee Members imprudently continued the investment in Blockbuster stock, any extra scrutiny justified by Plaintiffs' allegations of self-

---

March 9, 2006, Blockbuster announced that, due to an accounting misclassification, it would reclassify cash flows relating to the purchase of videos for its rental library contained in its financial statements dating back to 2003. Blockbuster had previously classified the purchases as an investing cash outflow and rental library assets as a noncurrent asset. However, as a result of discussions with the SEC, Blockbuster determined that rental library purchases should be classified as an operating cash outflow and that rental library assets should be classified as a current asset. Although Plaintiffs are careful to allege, again and again, that the investment community was convinced and assured by Blockbuster's accounting misclassification that the cash flow could support new initiatives and new debts, they do not allege that the March 9 announcement caused the stock price to drop. Such allegations are insufficient to support the claim that the Defendants should have considered themselves bound to divest.

ORDER – PAGE 7

interest yields them no benefit. Plaintiffs still fail to overcome the *Moench* presumption, in part because they fail to allege any nonpublic information artificially inflated the stock price. Accordingly, the Court grants Defendants' motions to dismiss Count I.[7]

### IV. PLAINTIFFS' ALLEGATIONS THAT THE COMMITTEE MEMBERS FAILED TO PROVIDE COMPLETE AND ACCURATE INFORMATION TO PLAN PARTICIPANTS FAIL TO STATE A CLAIM

Plaintiffs' second count survives only if Plaintiffs have adequately alleged that the Committee Members made misrepresentations. An affirmative duty to disclose can arise when special circumstances threaten a potentially extreme impact on a plan as a whole. *In re Dynegy, Inc. ERISA Litigation*, 309 F. Supp. 2d 861, 888 (S.D. Tex. 2004). Because Plaintiffs have failed to allege any such special circumstances, their failure-to-disclose claim must rest on allegations that the Committee Members made misrepresentations.[8] *See id*. at 885.

Plaintiffs' Count II fails to state a claim. Once again, it is difficult to discern just what it is that Plaintiffs' believe the Committee Members misrepresented. It appears that Plaintiffs refer to the information regarding Blockbuster's cash flow and the "No Late Fee" initiative. The Court previously dismissed Plaintiffs Count II on the grounds that its allegations of knowing misrepresentations failed to satisfy Rule 9(b)'s heightened pleading requirements.

---

[7]The Court likewise dismisses Count IV, which attempts to turn the Committee Members' alleged self-interest into a separate breach of a fiduciary duty. As noted above, the alleged self-interest goes toward Plaintiffs' failed prudence claim and does not constitute a separate claim. *See In re RCN Litigation*, 2006 WL 753149, *12 (D.N.J. Mar. 21, 2006).

[8]The absence of the threat of "a potentially extreme impact" is evidenced by the fact that the disclosures of nonpublic information are not alleged to have had *any* impact.

Docket Entry 25 at 17-18. Rather than attempt to meet those heightened pleading requirements, Plaintiffs purged Count II of any allegations of knowing misrepresentations. Instead, Plaintiffs have alleged that the Committee Members should have known about the information that should have been disclosed. But by doing so, they have neutered their second count. The Court can find no support for the contention that constructive knowledge is sufficient. *See, e.g., Dynegy* 309 F. Supp. 2d at 889 ("Common to all of these [cited] decisions is the requirement that the fiduciary charged with the duty to disclose have *actual* knowledge of material information, which he knows or should know the plan participants do not know, but need to know, to protect their interests.") (emphasis added). Accordingly, the Court dismisses Count II.

### V. PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED THAT REDSTONE OR VIACOM WERE FIDUCIARIES

Redstone and Viacom are improper parties because Plaintiffs have not adequately alleged that they were fiduciaries of the Plan. Fiduciary duties may arise either from the terms of the plan or from acts and practices in carrying it out. *Kirschbaum* 2008 WL 1838324 at *5. ERISA provides:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Plaintiffs' complaint is wholly devoid of any facts supporting the claim that Viacom and Redstone are fiduciaries of the Plan such that the Viacom's tax free

split-off from Blockbuster could have breached the fiduciary duty against self dealing. Accordingly, the Court dismisses Count VI.

### VI. THE COURT DISMISSES COUNTS III AND V

Because Counts III and V depend on an underlying breach of a fiduciary duty, and because the Court holds that Plaintiffs' have failed to allege any underlying breaches, the Court dismisses Counts III and V.

### CONCLUSION

For the reasons explained above, the Court dismisses the entirety of Plaintiffs' Amended Complaint. Accordingly, the Court grants Defendants' motions.

Signed August 19, 2008.

_____
David C. Godbey
United States District Judge